UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID SMITH,

                         NO. CIV. S-08-1049 LKK/KJM

       Plaintiff,

    v.

CHASE MORTGAGE CREDIT GROUP,
LA JOLLA LENDING & REAL
ESTATE, INC., PAUL BAKHTIAR,
POOYAN BAKHTIAR, WELLS FARGO,
N.A., WEST AMERICAN ESCROW,
INC., and DOES 1 through 10,          O R D E R
inclusive,

       Defendants.
_____/
AND RELATED COUNTERCLAIMS
_____/

        Plaintiff David Smith brings suit alleging that defendants committed various unlawful acts surrounding the refinance of his home loan. Plaintiff specifically alleges that Wells Fargo Bank ("Wells Fargo") violated the Truth in Lending Act ("TILA"), the Real Estate Procurement Act ("RESPA") and California Business and Professions Code § 17200. Pending before the court is plaintiff's motion for summary judgment against Wells Fargo.

1

Plaintiff also moves for declaratory and injunctive relief.  As explained herein, the court grants the motion in part and denies it in part.

## I. Background and Facts

**A.   Facts[1]**

Plaintiff brought this case alleging defendants' unlawful acts surrounding the negotiation and consummation of a refinance of plaintiff's home loan. In July 2002, plaintiff purchased residential property for which he obtained a home loan from Countrywide Home Loans ("Countrywide").[2]   In October 2007, plaintiff was contacted by defendant Paul Bakhtiar[3] to refinance his home loan.

---

[1]All facts are undisputed unless otherwise noted. Each party has objected to several items of the other's evidence and moved to strike some of the evidence. Many of the objections refer to evidence not relied on in resolution of the motion. To the extent the evidence is relied on, the objections are OVERRULED.

Defendants also move the court to take judicial notice of public records of deeds of trust for property at issue in this case. A court may take judicial notice of a fact not subject to reasonable dispute, either because the fact is generally known within the territorial jurisdiction of the trial court or because the fact is capable of accurate and ready determination from sources whose accuracy cannot reasonably questioned. Fed. R. Evid. 201(b). A court shall take judicial notice of a judicially noticeable fact "if requested by a party and supplied with the necessary information." Fed. R. Evid. 210(d). Here, the defendants have met that standard by providing the court with copies of the documents, which are public records. Accordingly, the court grants the request for judicial notice.

[2] Countrywide is not a party in this suit.

[3] Paul Bakhtiar is also referred to in the complaint and motion as Pooyan Bakhtiar. There is evidence that Bakhtiar used the name "Paul Baxter" when speaking with clients. See Decl. of David Smith In Support of Motion for Summary Judgment ("Smith Decl.") ¶ 3.

2

1     **1.   The Parties**

2          In October 2007, Bakhtiar was employed by defendant Chase

3     Mortgage Credit Group ("Chase").   The parties dispute whether

4     Bakhtiar was a loan broker or a loan processor.  <u>See</u> SSUF ¶ 3; Decl.

5     of Summer Haro In Support of Pls.' Mot. for Summ. J. ("Haro Decl.")

6     Ex. 10-11; Decl. of John Whitehair in Support of Defs.' Opp. to

7     Pls.' Mot. for Summ. J. ("Whitehair Decl.") Ex. C (Bakhtair Depo.

8     at 10:12-21).   Sometime in 2008, Chase's became La Jolla Lending

9     & Real Estate, Inc. ("La Jolla").   It is unclear whether Chase and

10    La Jolla became the same entity or operated as separate

11    corporations throughout plaintiff's loan negotiation, as the

12    evidence indicates that during this time La Jolla used its and

13    Chase's names interchangeably. <u>See</u> Whitehair Decl. Ex. B (Dadar

14    Dep. 11:9-22, 12:13-13:15); Ex. A (Smith Dep. 32:13-34:2); <u>see also</u>

15    Haro Decl. Ex. 10-11 (Bakhtiar's Resp. To Pl's Req. for Admis., No.

16    2); Whitehair Decl. Ex. C (Bakhtair Depo. at 10:3-10).

17         At the time, Wells Fargo had a broker origination agreement

18    with La Jolla whereby La Jolla would submit loan applications to

19    Wells Fargo and Wells Fargo would issue the loan.   Defendants

20    Bakhtiar served as the "Broker Contact" for La Jolla on various

21    loan documents received by plaintiff during his refinancing.  The

22    parties agree that La Jolla brokered the loan by Wells Fargo used

23    for plaintiff's home refinancing.  After the loan was consummated

24    on December 10, 2007, Wells Fargo held a security interest in the

25    loan and collected plaintiff's monthly payments.

26    ////

### 2.   The Loan Transaction

Plaintiff has tendered evidence that he was first contacted by Bakhtiar in October 2007, at which time Bakhtiar represented that he was a licensed agent working with Chase who would broker a loan for plaintiff.  Smith Decl. ¶ 3.  Bakhtiar denies that he represented himself as a licensed agent when he first spoke with plaintiff.  See Haro Decl. Ex. 10-11 (Bakhtiar's Resp. to Pl.'s Req. for Admis. No. 5).  When Bakhtiar contacted plaintiff, he was not licensed with either the California Department of Real Estate or the California Department of Financial Services.

Plaintiff has tendered evidence that Bakhtiar was the only person plaintiff corresponded with from Chase and La Jolla before escrow closed on the Wells Fargo loan on December 10.  Smith Decl. ¶ 3. However, defendant has tendered evidence that plaintiff also spoke with Mr. Dadar and Mr. Moorhaj, though it is unclear whether they spoke with plaintiff before or after escrow closed on the loan. See Whitehair Decl. Ex. A (Smith Dep. at 33:1-34:20), Ex. B (Dadar Dep. 19:5-20:13).

According to plaintiff, in November 2007 Bakhtiar told him that he would offer plaintiff a loan that would have no loan fees and have taxes impounded in the monthly payments to make the new loan payments equal to plaintiff's existing Countrywide loan payments.[4]  Smith Decl. ¶ 3.  Plaintiff would also receive $50,000

_____

[4]In support of his contention, plaintiff has tendered evidence that his monthly payment under his original loan was $1,860.24. Haro Decl. Ex. 1.  It is unclear from a review of this document, however, whether taxes and insurance were impounded in this

1  in cash back from the refinancing.  <u>Id.</u>  Defendant denies

2  plaintiff's contention and has tendered evidence that Bakhtiar told

3  plaintiff that the loan would include "reasonable fees for

4  brokering the loan" which would be included in the United States

5  Department of Housing and Urban Development ("HUD") closing

6  statement.  Haro Decl. Ex. 10-11 (Bakhtiar's Resp. to Interrogs.

7  Set One No. 10).

8      On December 1, 2007, a man representing himself as a notary

9  arrived at plaintiff's home with the documents for the Wells Fargo

10  loan on behalf of La Jolla.  Wells Fargo has tendered evidence that

11  the notary was Mr. Moorhaj from La Jolla.  Whitehair Decl. Ex. C

12  (Bakhtiar Dep. 47:7-25).  The loan documents provided to plaintiff

13  included a deed of trust and promissory note for the property by

14  which Wells Fargo secured the loan and acquired a security interest

15  in the property.  These documents state that the loan totaled

16  $264,500.00 with monthly payments of $1,607.13 and an interest rate

17  of 6.125 percent.  Plaintiff calculated that the loan would result

18  in $19,500.00 in cash back after he paid off the Countrywide loan.

19  However, none of the documents provided by plaintiff appear to

20  detail this cash back calculation.  Wells Fargo has tendered

21  evidence that on November 30, 2007, plaintiff signed a document

22

23  payment.  <u>See</u> <u>id.</u>  Defendant relies on a document titled "Uniform
Residential Loan Application" to detail that the Wells Fargo loan
24  refinance resulted in lower monthly payments by plaintiff than the
Countrywide loan.  <u>See</u> Smith Dep. 68:21-70:25 & Dep. Exs. 15 & 16.
25  Plaintiff has testified that these terms were incorrect, although
his testimony did not specify what he believed was incorrect.  <u>See</u>
26  <u>id.</u> at 70:4-25.

1  "Borrower's Estimated Closing Costs" which reflected $1,523.14 in

2  cash back.  Whitehair Decl. Ex. A (Smith Dep. 76:2-10 & Dep. Ex.

3  20).  Plaintiff testified that he did not recall signing the

4  document. Id.

5      Plaintiff contends that none of the documents he reviewed on

6  December 1, 2007 included a good faith estimate ("GFE"),

7  itemization of the amount financed, or statement that plaintiff had

8  the right to receive a written itemization for the loan.  Smith

9  Decl. ¶ 4. Wells Fargo relies on the "Borrower's Estimated Closing

10 Costs" and the "Loan Closing Instructions", which provide an

11 itemization of the loan, to demonstrate that plaintiff did receive

12 an itemization before consummation of the loan.  See Whitehair

13 Decl. Ex. A (Smith Dep. Exs. 20, 26).  Plaintiff testified that he

14 did not see the "Borrower's Estimated Closing Costs" and he was

15 never provided with the pages showing the itemization in the "Loan

16 Closing Instructions." Id. (Smith Dep. 76:2-10, 80:1-81:5).

17     Escrow on the Wells Fargo loan closed on December 10, 2007.

18 Plaintiff contends that he did not receive any GFE or itemization

19 of the loan before escrow closed.  Smith Decl. ¶ 5.  Wells Fargo

20 has tendered evidence that several versions of a GFE were faxed to

21 plaintiff before December 10, 2007.  See Haro Decl. Ex. 24.

22 Plaintiff contends that he never saw these.  See Pl.'s Reply to

23 SSUF ¶ 17; Whitehair Decl. Ex. A (Smith Dep. 76:2-10, 80:1-81:5).

24     According to Wells Fargo's person most knowledgeable on loan

25 procedures, Wells Fargo requires that the broker provide a GFE to

26 Wells Fargo as part of a complete loan package.  Reply Decl. of

1   Summer Haro In Support of Pl.'s Mot. for Summ. J. ("Haro Reply

2   Decl.") Ex. 33 (Benbow Dep. 21:1-4).  Wells Fargo does not have a

3   way of verifying that a GFE is provided to the borrower by the

4   broker, however.  <u>Id.</u> (Benbow Dep. 21:5-8).[5]  To demonstrate that

5   a GFE was delivered to plaintiff, defendant relies on Bakhtiar's

6   response to plaintiff's interrogatory, which prompted Bakhtiar to

7   describe "all facts describing the delivery method(s) you for

8   providing [sic] Plaintiff with documents for the subject loan."

9   Bakhtiar responded, "As far as I recall, Mr. Smith, like all

10  borrowers, was provided a 'Good Faith Estimate' at the time of the

11  initial loan estimates, as and (sic) Form Z Federal Loan Disclosure

12  and HUD Closing Statement before close of escrow, all of which he

13  signed for and received."  Whitehair Decl. Ex. E (Bakhtiar's Resp.

14  to Pl.'s Interrogs., No. 9).

15      Plaintiff also contends that he never received a HUD-1

16  Preliminary Settlement Statement from Wells Fargo.  Under Wells

17  Fargo's policy, the closing agent is responsible for preparing the

18  HUD-1 Settlement Statement.  Haro Reply Decl. Ex. 33 (Benbow Dep.

19  30:3-19).  Wells Fargo does not have a mechanism for verifying that

20  the closing agent includes the estimated HUD-1 or the Truth in

21  Lending disclosures in the closing package to the borrower.  <u>Id.</u>

22  (Benbow Dep. 40:15-23).  Plaintiff received the final HUD-1

23  Settlement Statement after escrow had closed on the Wells Fargo

24

         [5]Defendant has objected to plaintiff's reliance on these
25  portions of the deposition as not reflecting Ms. Benbow's complete
    testimony, but has not tendered the omitted portions of the
26  deposition transcript for the court's review.

loan on December 10, 2007.  The final HUD included $15,364.62 in fees for settlement charges.

### 3.   Events Subsequent to the Close of Escrow

After escrow closed on the loan, plaintiff contacted Bakhtiar to discuss the loan fees.  Bakhtiar testified that the loan fees attached to the HUD-1 were inadvertent mistakes and that they offered to refund plaintiff for certain fees.  Haro Reply Decl. Ex. 32 (Bakhtiar Dep. 64:11-67:12).  Plaintiff later received a refund check for the Wells Fargo loan for $2,564.23.  On February 1, 2008, plaintiff demanded rescission of the loan based on the grounds that Wells Fargo had not provided plaintiff with a GFE or itemization of the loan.  Plaintiff then filed the instant suit in Sacramento County Superior Court.

### B.   Procedural History

Plaintiff commenced this action in Sacramento County Superior Court on April 14, 2008, which was subsequently removed to this court.   In his complaint, plaintiff asserts six claims against various defendants: breach of fiduciary duty, negligence, fraud, unfair business practices, violation of TILA, and injunctive relief.   Only two of these, for violation of TILA and unfair business practices under California Government Code § 17200, are asserted against defendant Wells Fargo.  Based on these claims, plaintiff seeks injunctive and declaratory relief against Wells Fargo, in addition to damages and costs.

////

////

8

## II. Standard for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56

Summary judgment is appropriate when there exists no genuine issue as to any material fact.  Such circumstances entitle the moving party to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish the existence of a genuine issue of material fact.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Secor Ltd., 51 F.3d at 853.  In doing so, the opposing party may not rely upon the denials of its pleadings, but must tender evidence of specific facts in the form of affidavits and/or other admissible materials in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); see also First Nat'l Bank, 391 U.S. at 289.  In evaluating the evidence, the court draws all reasonable inferences from the facts before it in favor of the

1  opposing party.  <u>Matsushita</u>, 475 U.S. at 587-88 (citing <u>United</u>

2  <u>States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (<u>per</u> <u>curiam</u>));

3  <u>County of Tuolumme v. Sonora Cmty. Hosp.</u>, 236 F.3d 1148, 1154 (9th

4  Cir. 2001).  Nevertheless, it is the opposing party's obligation

5  to produce a factual predicate as a basis for such inferences.  <u>See</u>

6  <u>Richards v. Nielsen Freight Lines</u>, 810 F.2d 898, 902 (9th Cir.

7  1987).  The opposing party "must do more than simply show that

8  there is some metaphysical doubt as to the material facts . . . .

9  Where the record taken as a whole could not lead a rational trier

10 of fact to find for the nonmoving party, there is no 'genuine issue

11 for trial.'"  <u>Matsushita</u>, 475 U.S. at 586-87 (citations omitted).

12                            **III. Analysis**

13      Plaintiff alleges two causes of action against Wells Fargo:

14 violation of TILA, 15 U.S.C. § 1601 *et seq*., and unlawful and

15 unfair business practices in violation of California Business and

16 Professions Code § 17200.  Plaintiff moves for summary judgment on

17 both claims against Wells Fargo.  The court grants the motion in

18 part and denies it in part.

19 **A.    Violation of The Truth in Lending Act**

20      Plaintiff alleges Wells Fargo violated TILA by failing to

21 provide him with an itemization of the loan transaction and failing

22 to provide a GFE of the loan costs.[6]  Congress designed TILA to

23

24        [6] In plaintiff's motion for summary judgment, plaintiff also
   asserts that defendants violated TILA by failing to advise him of
25 his right to request an itemization of the loan transaction
   pursuant to 15 U.S.C. § 1638(a)(2)(B). This was not pled in the
26 complaint, however, and therefore it is not proper for plaintiff
   to assert this allegation as a basis for summary judgment.

1   protect all consumers, who are inherently at a disadvantage in loan

2   and credit transactions. <u>Semar v. Platte Valley Fed. Sav. & Loan</u>

3   <u>Ass'n</u>, 791 F.2d 699, 705 (9th Cir. 1986).  TILA was enacted "to

4   assure meaningful disclosure of credit terms so that the consumer

5   will be able to compare more readily the various credit terms

6   available to him and avoid the uninformed use of credit, and to

7   protect the consumer against inaccurate and unfair credit billing."

8   15 U.S.C. § 1601(a).  "The Act requires creditors provide borrowers

9   with clear and accurate disclosures of terms dealing with things

10  like finance charges, annual percentage rates of interest, and the

11  borrower's rights."  <u>Beach v. Ocwen Fed. Bank</u>, 523 U.S. 410, 412

12  (1998).

13      **1.   Failure to Provide Plaintiff with Written Itemization**

14      Plaintiff first seeks summary judgment on the basis that Wells

15  Fargo violated TILA by failing to timely provide him with a written

16  itemization of the amount financed for the loan.  TILA mandates the

17  creditor to provide several initial disclosures for any consumer

18  credit transaction, except those that are "open ended credit

19  plan[s]."[7]  For subject transactions, the creditor must disclose

20  the amount financed, the finance charge, plaintiff's rescission

21  rights, and certain other information before the credit is

22  extended.  15 U.S.C. §§ 1638(a)(2)-(4), (b)(2).  In addition to the

23

24      [7] An "open-end credit plan" is defined under TILA as a plan
    under which the creditor reasonably contemplates repeated
25  transactions, which prescribes the terms of such transactions, and
    which provides for a finance charge which may be computed from time
26  to time on the outstanding unpaid balance.  15 U.S.C. § 1602(i).

disclosure of the amount financed, a creditor must also provide a statement of the consumer's right to obtain, upon a written request, a written itemization of the amount financed. Id. § 1638(a)(2)(B). Itemization of the amount financed must include: (1) the amount that will be paid directly to the consumer, (2) the amount that will be credited to the consumer's account to discharge the obligations owed to the creditor, (3) each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person, and (4) the total amount of any charges which are part of the finance charge but which will be paid by the consumer before or at the time of the consummation of the transaction, or have been withheld from the proceeds of the credit. Id.

Wells Fargo has tendered evidence of an itemization of the estimated closing costs entitled "Borrower's Estimated Closing Costs", which is dated November 30, 2007, prior to consummation of the loan on December 1, 2007.  Whitehair Decl. Ex. 20.  This document appears to include plaintiff's signature. See id.  The document details the total amount of the loan, the payoff charges for the Countrywide loan, other charges paid to third parties and identification of those parties, and plaintiff's refund. Id. Plaintiff, however, testified that he did not see the document before becoming obligated to the Wells Fargo loan and does not recall having signed it.  Whitehair Decl. Ex. A (Smith Dep. 76:2-10).

Wells Fargo has also tendered evidence of a document entitled

1  "Loan Closing Instructions" which includes an itemization of the

2  charges associated with the loan.  It is unclear, however, whether

3  this itemization reflects the names of the third parties receiving

4  funds, as required under 15 U.S.C. § 1638(a)(2)(B).  See Whitehair

5  Decl. Ex. A (Smith Dep. Ex. 26). According to plaintiff, he only

6  saw pages 287 to 294 of the "Loan Closing Instructions", which did

7  not include the cited itemization on pages 285 to 286.  Id. (Smith

8  Dep. 80:1-81:5).

9       Therefore, there is a dispute of fact as to whether plaintiff

10 received   the   disclosures,   with   the   resolution   resting   on

11 determinations of credibility of the witnesses.  Defendant has met

12 its burden to tender evidence that would permit a jury to find in

13 its favor, as there is evidence from which a reasonably jury could

14 conclude that defendant provided plaintiff with an itemization that

15 met the TILA disclosure requirements.  This suffices to defeat

16 plaintiff's   motion   for   summary   judgment   on   this   aspect   of

17 plaintiff's claim.  See Matsushita Elec. Indus. Co., 475 U.S. at

18 585-86.

19      **2.   Failure to Provide Plaintiff with a Good Faith Estimate
            of The Loan**

20

21      TILA offers an alternative method for a creditor to meet the

22 statute's requirement that it provide the itemization of the amount

23 financed.  When a lender is required to provide a creditor with a

24 GFE under the Real Estate Settlement Procedures Act (RESPA), this

25 GFE satisfies TILA's itemization requirement. 15 U.S.C. § 1638(b);

26 see also 12 C.F.R. § 226.18(c).  This disclosure requirement only

1  applies to "residential mortgage transactions," 15 U.S.C. §

2  1638(b), defined under TILA as a mortgage, deed of trust or other

3  consensual security interest that is created or retained against

4  the residential property to finance "the acquisition or initial

5  construction" of the property. 15 U.S.C. § 1602(w).

6      The plain language of the statute indicates that Congress

7  intended a GFE in lieu of an itemization only for loans that secure

8  the initial acquisition of the property, not a refinance loan. See

9  id. Other sections of the statute support this distinction between

10  a residential mortgage transaction and a loan refinance. See 15

11  U.S.C. § 1635(e)(1)-(2); 12 C.F.R. § 226.23(f)(1)-(2).

12  Furthermore, the distinction between a residential mortgage and a

13  loan refinance under TILA has been noted by other courts. See

14  Watts v. Decision One Mortg. Co., LLC, No. 09 CV 0043 JM (BLM),

15  2009 WL 1657424, *3 (S.D. Cal. June 11, 2009) (refinancing may be

16  amenable to rescission under TILA though purchase money mortgage

17  is not), Cataulin v. Washington Mut. Bank, SFB, No. 08 CV 2419 JM

18  (NLS), 2009 WL 648921, *4 (S.D. Cal. Mar. 9, 2009)(refinancing

19  transaction amenable to rescission though purchase money mortgage

20  for rental property is not). Therefore, because plaintiff's

21  refinance was not an initial acquisition of residential property,

22  the loan does not qualify for the GFE alternative to itemization

23  under 12 C.F.R. § 226.18(c). Accordingly, plaintiff's motion must

24  be denied to the extent plaintiff alleges that defendant violated

25  TILA by failing to provide a GFE.

26  ////

**B.    Violation of California Business and Professions Code § 17200**

California Business and Professions Code § 17200 provides, in relevant part, "[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. Prof. Code § 17200.  "Because . . . section 17200 is written in the disjunctive, it establishes three varieties of unfair competition -- acts or practices which are unlawful, or unfair, or fraudulent." Lippitt v. Raymond James Financial Services, Inc., 340 F.3d 1033, 1043 (9th Cir. 2003) (quoting Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Company, 20 Cal.4th 163, 180 (1999)). "[A] practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' or vice versa." Id.  Virtually any federal, state, or local law can serve as a predicate for an action under section 17200.  Smith v. State Farm Mutual Automobiles Ins. Co., 93 Cal. App. 4th 700, 717 (2001) (citing State Farm Fire & Casualty Co. v. Superior Court (Allegro), 45 Cal. App. 4th 1093, 1102).  Injunctive relief and/or restitution are the authorized remedies.  Cal. Bus. & Prof. Code § 17203.

Plaintiff first asserts that defendant's violation of TILA constitutes a violation of the UCL.  As discussed above, there is an issue of fact as to whether defendant violated TILA, and thus whether defendant's conduct was an "unlawful business activity."

Plaintiff also alleges that defendant violated the UCL by violating RESPA and by violating Wells Fargo's own business practices as defined in Wells Fargo's "Broker Origination Guide."

15

1  The court discusses each of these allegations in turn.

2      **1.   Violation of RESPA**

3      In the complaint, plaintiff alleges defendant's failure to

4  adequately disclose the terms of the loan and to satisfy acceptable

5  practices in underwriting the loan constitute an unlawful and

6  unfair business practice under California law. Compl. ¶ 14.

7  Plaintiff expands upon this violation in the instant motion by

8  alleging that defendant violated RESPA by failing to provide

9  plaintiff with a GFE or to ensure that the dealer provide plaintiff

10 with the GFE pursuant to 24 C.F.R. § 3500.7(a)(1), (b)(1).

11     RESPA was passed to ensure that home buyers and sellers

12 receive notice of settlement costs well in advance of the

13 consummation of the loan transactions. 12 U.S.C. § 2601. RESPA

14 applies to all "federally related mortgage loan[s]," which include

15 a loan secured by a first or subordinate lien on residential real

16 property designed principally for occupancy, including any secured

17 loan where the proceeds are used to prepay or pay off an existing

18 loan secured by the same property. 12 U.S.C. § 2602(1)(A). Under

19 Regulation X, RESPA's enforcement mechanism, no later than three

20 business days after a lender[8] receives an application, or

21 information sufficient to complete an application, the lender must

22 provide the applicant with a GFE.  24 C.F.R. § 3500.7(a)(1).

23 Additionally, where the loan is brokered, the lender must either

24 ───────────────

25     [8]A lender is defined as "the secured creditor or creditors
   named in the debt obligation and document creating the lien." 24
26 C.F.R. § 3500.2.

                              16

provide the GFE to the loan applicant or ensure that the broker provide the GFE to the applicant. 24 C.F.R. § 3500.7(b)(1). Where the lender chooses the latter option, the lender is responsible for ascertaining that the GFE has been provided. Id.

The GFE must contain an estimate of settlement charges the borrower is likely to incur, the loan amount, the loan term, the interest rate, as well as other information described in detail in the regulations. 24 C.F.R. § 3500.2; 24 C.F.R. App. C to § 3500.

Plaintiff contends that Wells Fargo or its broker La Jolla did not provide plaintiff with a GFE before consummation of the loan. According to plaintiff, as discussed above, he does not recall signing the "Borrower's Estimated Closing Costs" form assertedly provided to him. Whitehair Decl. Ex. A (Smith Dep. 76:2-10). Defendant disputes this, contending that the form bears plaintiff's signature. See id. (Smith Dep. Ex. 20). It is unclear, however, whether defendant argues that this itemization is sufficient to substitute as a GFE. If that is defendant's position, the "Borrower's Estimated Closing Costs" does not appear to contain all of the information required by the regulations, such as the interest rate, whether the interest rate may rise, and its maximum amount. See 24 C.F.R. App. C to § 3500.

Second, Wells Fargo alleges that a GFE was delivered to plaintiff based on Bakhtiar's response to plaintiff's interrogatory. Bakhtiar stated that as far as he could recall, plaintiff, like all borrowers, was provided a GFE. Whitehair Decl. Ex. E (Bakhtiar's Resp. to Pl.'s Interrogs., No. 9). However, the

17

1  lender itself must have a mechanism for ensuring the borrower

2  received the GFE before consummation of the loan under RESPA.  24

3  C.F.R. § 3500.7(b)(1).  Here, it is undisputed that Wells Fargo

4  does not have a practice of delivering a GFE to a borrower for a

5  residential loan.  Haro Reply Decl. Ex. 33 (Benbow Dep. 19:1-5).

6  Further, it is undisputed that they do not have any way of

7  verifying that the GFE is provided to the borrower by the broker.

8  Id. (Benbow Dep. 20:24-21:8).

9       Wells Fargo next argues that plaintiff cannot pursue a claim

10 under RESPA because it does not provide for a private right of

11 action.  This argument also fails.  The California courts have held

12 that it is not relevant whether the underlying statute serving as

13 a basis for a UCL claim also provides for a right of action;

14 section 17200 can form the basis for a private cause of action even

15 if the underlying statute does not.   See, e.g., Stop Youth

16 Addiction, Inc. v. Lucky Stores, 17 Cal. 4th 553, 562 (1998)

17 (abrogated on other grounds by Cal. Bus. & Prof. Code § 17204

18 (2004)); Manufacturers Life Insurance Co. v. Superior Court, 10

19 Cal. 4th 257 (1995); see also Chabner v. United of Omaha Life Ins.

20 Co., 225 F.3d 1042, 1048 (9th Cir. 2000) (applying California law).

21 Defendant has offered no authority for its related argument that

22 because the underlying violation is one of federal law, a different

23 result obtains.  In fact, the Court of Appeals has held that UCL

24 claims may be based on federal statutes, unless the federal statute

25 completely preempts the action.   See Lippitt, 340 F.3d at 1042.

26 Defendant does not contend that plaintiff's UCL claim is preempted.

1  Moreover, it has not tendered any evidence that by its amendment

2  of 12 U.S.C. § 2604(c), Congress intended to bar private

3  enforcement for failure to provide a GFE under 24 C.F.R. §

4  3500.7(b)(1).

5      Because Wells Fargo has failed to tender any evidence that it

6  ensured that a GFE was provided to plaintiff, its conduct violated

7  RESPA, which constituted an unlawful business practice under the

8  UCL. See McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457,

9  1471-1472 (holding that a loan transaction is a business practice

10 under the UCL). Plaintiff's motion is therefore granted on this

11 cause of action, to the extent that it is premised on a RESPA

12 violation.

13      **2.   Violation of California Financial Code Section 50505**

14      In his motion, plaintiff contends that because the defendant

15 violated a provision of RESPA or its regulations, defendant

16 necessarily violated California Financial Code section 50505, which

17 also constitutes an unlawful business practice under the UCL. Mot.

18 at 14. Though this claim is not alleged in plaintiff's complaint

19 and therefore not properly raised on summary judgment, plaintiff's

20 argument is unavailing on its merits. Banks that do business under

21 the authority of or in accordance with a charter issued by the

22 United States are exempted from section 50505. Cal. Fin. Code §

23 50003(g)(1). Wells Fargo asserts in its opposition that it is a

24 national bank chartered under the United States, to which plaintiff

25 does not respond in his reply. Consequently, plaintiff's motion

26 fails insofar as it seeks summary judgment on this aspect of his

1  UCL claim.

2  **3.  Violation of Wells Fargo's Own Loan Policies**

3  Finally, plaintiff alleges Wells Fargo's failure to comply

4  with its own loan origination policies and procedures in issuing

5  a loan to plaintiff constitutes an unfair business practice.  The

6  UCL makes unlawful business practices that are "unfair" and this

7  standard "is intentionally broad, thus allowing courts maximum

8  discretion to prohibit new schemes to defraud." Smith, 93 Cal. App.

9  4th at 718.  "The test of whether a business practice is unfair

10 'involves an examination of [that practice's] impact on its alleged

11 victim, balanced against the reasons, justifications and motives

12 of the alleged wrongdoer.  The court must weigh the utility of the

13 defendant's conduct against the gravity of the harm to the alleged

14 victim." Id.

15 It is a question of fact whether a business practice is

16 "unfair" under the UCL by being "immoral, unethical or oppressive"

17 or where its harm to the consumer outweighs its benefits. See,

18 e.g., Paduano v. Amer. Honda Motor Co., 169 Cal. App. 4th 1453,

19 1469 (2009); Linear Tech. Corp. v. Applied Materials, Inc., 152

20 Cal. App. 4th 115, 134 (2007); Californians for Population

21 Stabilization v. Hewlett-Packard Co., 58 Cal. App. 4th 273, 286

22 (1997). However, the UCL sounds in equity and therefore there is

23 no right to a jury determination as to whether a defendant's

24 conduct was unfair under the statute; the court must make this

25 factual determination. Hodge v. Superior Court, 145 Cal. App. 4th

26 278, 282-85 (2006); see also Steinberg Moorad & Dunn, Inc. v. Dunn,

1   136 Fed. Appx 6 (9th Cir. 2005) (holding that it was not harmless

2   error for court to submit to a jury whether defendant's conduct was

3   unfair under the UCL). Thus, the court must determine whether the

4   plaintiff has borne his burden of showing that the facts

5   demonstrate the defendant acted unfairly in violation of the UCL.

6       Defendants contend that an entity's violation of its own

7   internal policies cannot be an "unfair" business practice under the

8   UCL because it would impose a higher duty on the entity than its

9   fiduciary or other legal obligations.    However, defendant's

10   construction would narrow the UCL so that the only actionable

11   conduct would be that which would otherwise be unlawful or give

12   rise to an independent tort.  This interpretation is not supported

13   by the text or purpose of the statute.  See Smith, 93 Cal. App. 4th

14   at 718.  Moreover, courts have repeatedly held that conduct would

15   give rise to a UCL violation that would not otherwise sound in tort

16   or be unlawful.   See, e.g., Ticconi v. Blue Shield of Cal. Life &

17   Health Ins. Co., 160 Cal. App. 4th 528 (2008); Buller v. Sutter

18   Health, 160 Cal. App. 4th 981 (2008); Linear Tech. Corp. v. Applied

19   Materials Inc., 152 Cal. App. 4th 115 (2007), McKell v. Washington

20   Mutual Inc., 142 Cal. App. 4th 1457 (2006). Accordingly, the court

21   cannot agree that plaintiff's UCL claim, to the extent that it is

22   premised on violations of Wells' Fargo's own policies, is untenable

23   as a matter of law.

24       Plaintiff alleges two violations of Wells Fargo's Broker

25   Origination Guide as the basis for defendant's unfair business

26

1   practices.[9] First, plaintiff alleges Wells Fargo was obligated to

2   re-disclose all fees to a borrower upon Wells Fargo's receipt of

3   the credit package from the broker, but failed to disclose any loan

4   fees.   Second, plaintiff alleges defendant used a broker that

5   employed an unlicenced agent, Bakhtiar, to issue the loan.

6        Wells Fargo's "Broker Origination Guide" states that "Wells

7   Fargo Wholesale Lending will re-disclose all fees to borrowers upon

8   receipt of the credit package" from the broker.   Haro Decl. Ex. 30

9   (Wells Fargo's Wholesale Lending Broker Origination Guide, ¶

10  301.07).   Wells Fargo argues that this is misleading, as the Guide

11  generally mandates that the broker be the entity that make the loan

12  disclosures to the borrower.   A review of the Guide reveals

13  defendant's position is insupportable.  Although the Guide provides

14  that the broker make initial disclosures to the borrower, it

15  expressly states that Wells Fargo assumed the responsibility to

16  "re-disclose" all fees in the loan to the borrower.  See id.

17       It is not clear from the evidence tendered, however, whether

18  this obligation was met.  Plaintiff argues that Wells Fargo did not

19  disclose any loan fees until after escrow closed on the loan.

20  Defendant contends that it did disclose loan fees to plaintiff

21  through La Jolla.  See Whitehair Decl. Ex. A (Smith Dep. 76:2-10

22  & Dep. Ex. 20, 26).  It appears to the court that where the Guide

23

_____

24       [9] In the complaint, plaintiff alleges defendant's use of a
    falsified notary certification and failure to verify that the loan
25  would be a material benefit to plaintiff as additional ways
    defendant conducted unfair business practices under defendant's
26  Broker Origination Guide.  These allegations are not discussed in
    the instant motion.

1  specifically places the responsibility on Wells Fargo, it is

2  inconsistent to suggest it may be discharged through an agent.  On

3  the other hand, the Guide does not directly prohibit discharge

4  through a broker.   Under the circumstance, the issue requires

5  further factual development.  The court therefore cannot conclude

6  that, at present it cannot decide as a matter of law, had Wells

7  Fargo failed to adhere to the terms of the Guide.

8      Moreover, even if Wells Fargo did violate this term of its

9  Guide, the court is not persuaded that this constituted "unfair"

10  conduct under the UCL.  As described above, the determination of

11  whether conduct is unfair takes the form of a balancing test,

12  whereby the factfinder weighs the harm to the borrower against the

13  utility of the conduct to the lender.  See Smith, 93 Cal. App. 4th

14  at 718.  Here, plaintiff has not shown that defendant's conduct had

15  any adverse impact on him, given that there is evidence that he did

16  not in fact rely on the disclosures made to him during the

17  refinance process.  See Whitehair Decl. Ex. A (Smith Dep. 64:1-

18  68:25).

19      Plaintiff's second allegation under this cause of action is

20  that Wells Fargo violated its own policies by using a broker that

21  employed an unlicensed agent.  California Business Code section

22  10130 declares it unlawful for anyone to act as a real estate

23  broker without first obtaining a license.  Section 10131 defines

24  real estate broker as a person who "solicits borrowers or lenders

25  for or negotiates loans or collects payments of performs services

26  for borrowers or lenders or note owners in connection with loans

secured directly or collaterally by liens on real property."  Cal. Bus. & Prof. Code § 10131 (d).  Section 10132 defines real estate salesperson as one who, for compensation or in expectation of compensation, is employed by a licensed real estate broker to do certain acts a broker may do.  Cal. Bus. & Prof. Code § 10132.

Here, it is undisputed that Bakhtiar was not a licensed real estate broker with the California Departments of Real Estate or Financial Services in 2007.  However, there is a factual dispute regarding whether Bakhtiar's acted as a broker or solely as a loan processor.  See SSUF ¶ 3; Haro Decl. Ex. 10-11; Whitehair Decl. Ex. C (Bakhtair Depo. at 10:12-21).  Additionally, as above, plaintiff has not shown that if Bakhatiar acted as a real estate broker during plaintiff's refinance, this constituted "unfair" business practices under the UCL such that the utility of the practice was outweighed by its harm to plaintiff, as plaintiff has directed the court to no facts indicating the harm he suffered by this practice. See Smith, 93 Cal. App. 4th at 718.  Accordingly, plaintiff's motion must be denied, at present, on this aspect of his UCL claim.

## IV.  Conclusion

For the reasons stated herein, plaintiff's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

DATED:  September 2, 2009.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT